# United States Court of Appeals
## For the First Circuit

---

No. 99-1924

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERTO ARIAS,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

---

Before

Boudin, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lynch, Circuit Judge.

---

Elaine H. Thompson for appellant.
Christopher S. Rhee, Attorney, United States Department of Justice, with whom Margaret E. Curran, United States Attorney, and Zechariah Chafee, Assistant United States Attorney, were on brief for appellee.

January 17, 2001

**CYR, <u>Senior Circuit Judge</u>.** Following a brief jury trial, Roberto Arias appeals from the judgments of conviction entered against him in the District of Rhode Island for (i) aiding and abetting the possession of heroin by one Luis Moscoso, with intent to distribute, <u>see</u> 21 U.S.C. § 841(a); 18 U.S.C. § 2, and (ii) conspiring to possess heroin, with intent to distribute, <u>see</u> 21 U.S.C. § 846. We affirm those judgments.

## I

## <u>BACKGROUND</u>

The trial centered around what Arias knew about the $20,000 "brick" of high-grade heroin — heavily wrapped in paper, plastic and tape — which was removed from Moscoso's jacket pocket on November 5, 1998, after he and Arias were arrested by narcotics detectives of the Providence Police Department following their 15-to-20-minute mobile surveillance of a blue Volkswagen owned and operated by Arias, with Moscoso in the passenger seat. As there was no evidence that Arias ever possessed the heroin, the government relied upon circumstantial evidence in a successful effort to persuade the jury that the exculpatory trial testimony given by Arias simply was not credible.

Arias testified that he had "bumped into" Moscoso "on the street" in New York City a few months earlier and urged him to call "if he ever came [to Providence]." Then, according to Arias, on November 5, 1998, Moscoso called, stated that he was in the Providence area, and asked Arias to meet him at the corner of Broad Street and Clayton Street and drive him to the Providence Pizza Palace, where Moscoso was to meet someone named "Miguel."[1]

The government neither attempted to demonstrate, nor claimed, that Arias ever saw, smelled or touched the heroin Moscoso carried in his jacket pocket. Instead, it sought to persuade the jury that the Arias testimony — particularly his

---

[1]Although the statement Arias attributed to Moscoso — that Moscoso needed a ride to the Providence Pizza Palace to meet "Miguel" — was central to the Arias defense, Arias neither mentioned the nature of the relationship between "Miguel" and Moscoso, nor the purpose of the anticipated meeting with "Miguel." Nor does the trial record contain any explanation as to why Moscoso, having just arrived from New York City, would need a ride to the Providence Pizza Palace, where, as the evidence plainly demonstrated, he was to deliver the heroin.

Moreover, experienced narcotics detectives testified, without contradiction, that drug dealers are notoriously reluctant to deliver large quantities of illicit drugs to locations with which they are unfamiliar. These witnesses explained that drug dealers scrupulously avoid such arrangements because it is common practice for drug dealers to "set up" a competitor by placing an order for delivery to a location at which the unwitting seller can be forcibly relieved of the illicit drugs, thereby enabling the putative "buyer" to acquire the drugs at no cost and with little concern that the victim will report the loss to law enforcement authorities.

4

explanation for the bizarre maneuvers repeatedly performed by the blue Volkswagen, as observed by the officers conducting the clandestine mobile surveillance — abundantly demonstrated not only Arias' guilty knowledge of the criminal mission upon which Moscoso was embarked, but Arias' complicity in the mission as well.

The circumstantial evidence presented by the government sharply undercut the "mere presence" defense offered by Arias, readily enabling the jury to find beyond a reasonable doubt that at around 8:30 p.m. on November 5, 1998, the Providence Police Department had received an anonymous tip that two Hispanic males were en route to the Providence Pizza Palace from New York City in a blue Volkswagen, bearing Rhode Island license plate CV-270, with a large quantity of heroin. Detective Robert Enright, an experienced narcotics officer, testified that he was assigned to conduct mobile surveillance on the blue Volkswagen expected to arrive shortly in the Broad Street area, near the entrance to Roger Williams Park in Providence, en route from New York City. Pursuant to standard practice, Detective Enright selected a nondescript, unmarked, used vehicle for the surveillance.

At the time Detective Enright initially spotted the blue Volkswagen, it was carrying two males, as anticipated, and traveling —

5

"at an excessive speed, faster than everybody else[,] doing serpentine maneuvers. [That is, it] was passing people on the left and the right. [It] was using the right lane to pass and just doing a serpentine around the other vehicles ... on Broad Street ... until right about the overpass on Broad Street .... [A]fter that, it was going slower than traffic and pulled over ... to the curb ...[,] [t]he passenger [i.e., Moscoso] ... exited the vehicle ... walked a few feet ... stood in front of ... a liquor store ...[,] did not [enter,] ... [but] looked all around[,] the area." The driver [i.e., Arias] "stayed in the car and was also looking around."

No less curiously, the blue Volkswagen repeatedly made back-to-back U-turns, in traffic, and from time to time departed the busier streets, drove down a quiet residential street, then parked briefly with its lights out before resuming its circuitous route on major thoroughfares.

Moreover, on at least one occasion, while first in line approaching a green traffic light at a busy intersection, Arias stopped the blue Volkswagen, waited until the green light turned to red, then proceeded swiftly through the intersection an instant before the opposing traffic received the green light to proceed into the intersection.[2] Some of these maneuvers were

---

[2]Detective Enright further testified that on several occasions after Moscoso had exited the Arias vehicle, observed the traffic, and returned to the Volkswagen without speaking with anyone, Arias would cause the vehicle to take off abruptly — in a "jackrabbit start" — into the traffic flow.

repeated several times by the blue Volkswagen during the surveillance, which lasted from 15 to 20 minutes yet traversed no more than four to five miles.

The trial focused principally upon the exculpatory testimony provided by Arias, as well as extensive testimony from various law enforcement officers responsible for the vehicular surveillance of the blue Volkswagen. The government relied upon circumstantial evidence and an appeal to juror commonsense, essentially contending that the exculpatory testimony provided by Arias simply was not credible, particularly in light of the testimony by Detective Enright and other experienced narcotics detectives who described the surveillance of the blue Volkswagen in minute detail.

## II

### DISCUSSION

### A.   The Conspiracy Verdict

We must affirm the conspiracy conviction unless no rational juror could have found that each essential element of the alleged offense was established beyond a reasonable doubt. See United States v. Josleyn, 99 F.3d 1182, 1190 (1st Cir. 1996), cert. denied sub nom. Billmyer v. United States, 519 U.S. 1116 (1997). "All credibility issues are to be resolved, and every reasonable inference [is to be] drawn, in the light most

7

favorable to the verdict." Id. (Emphasis added.) "[M]oreover, as among competing inferences, two or more of which are plausible, [we] must choose the inference that best fits the prosecution's theory of guilt." United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995). After carefully scrutinizing the entire trial record, we conclude that the compelling circumstantial evidence presented by the government, combined with various corroborative credibility determinations well within the exclusive province of the jury, afforded adequate support for the conspiracy conviction. See id.

The central factfinding task for the jury was what, if anything, an ostensibly unsuspecting Arias knew about the heroin distribution mission upon which Moscoso was embarked as the blue Volkswagen was en route to the Providence Pizza Palace for the meeting with "Miguel." The defense essentially maintained, correctly enough, that Arias' "mere presence" at the crime scene and "mere association" with Moscoso were insufficient to support the conspiracy charge. See United States v. Mangual-Corchado, 139 F.3d 34, 44 (1st Cir.); cert. denied sub nom. Cirilo-Munoz v. United States, 525 U.S. 942 (1998); United States v. Batista-Polanco, 927 F.2d 14, 18 (1st Cir. 1991). Rather, the government had to prove, beyond a reasonable doubt, that Arias and Moscoso "agreed, at least tacitly, to commit the substantive

8

offense which constituted the object of their agreement, and that [Arias] voluntarily participated in ... [it.]" <u>United States</u> v. <u>DiMarzo</u>, 80 F.3d 656, 661 (1st Cir.); <u>cert.</u> <u>denied</u> <u>sub nom.</u> <u>Alzate-Yepez</u> v. <u>United States</u>, 519 U.S. 904 (1996).

On the other hand, as the government points out, the jury was entitled to rely on circumstantial evidence to infer any and all essential elements of the alleged conspiracy, <u>provided</u> the evidence demonstrated, beyond a reasonable doubt, <u>more</u> <u>than</u> <u>mere</u> <u>presence</u> <u>at</u> <u>the</u> <u>crime</u> <u>scene</u> <u>and</u> <u>more</u> <u>than</u> <u>mere</u> <u>association</u> <u>with</u> <u>those</u> <u>involved</u> <u>in</u> <u>the</u> <u>crime</u>. <u>See</u> <u>id.</u> Finally, the available circumstantial evidence is to be <u>viewed</u> <u>in</u> <u>the</u> <u>light</u> <u>most</u> <u>favorable</u> <u>to</u> <u>the</u> <u>verdict</u>, in order to determine whether it affords sufficient support for various incriminating inferences the jury reasonably may have drawn from the Arias trial testimony. <u>See</u> <u>id.</u>

Arias testified that when requested to drive Moscoso to the Providence Pizza Palace to meet "Miguel," he failed to advise Moscoso that he <u>did</u> <u>not</u> <u>know</u> (i) how to get to the junction of Broad Street and Clayton Street, where he was to meet Moscoso, or (ii) whether the Providence Pizza Palace was located in Providence or neighboring Cranston, Rhode Island. Thus, the jury was entitled to draw a reasonable inference that this implausible testimony <u>either</u> (i) constituted a fabricated

9

foundation for the essential linchpin in the Arias defense (viz., that the bizarre behavior of the blue Volkswagen and its occupants, as observed by the officers conducting the mobile surveillance, was due simply to the aimless meanderings of a driver lost in an unfamiliar area) or (ii) demonstrated Arias' "guilty knowledge" of the criminal mission upon which he and Moscoso were jointly embarked. See, e.g., United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994) ("[c]ircumstantial evidence tending to show guilty knowledge need not compel a finding of such knowledge in order to sustain a conviction; all that is necessary is that reasonable jurors could be convinced beyond a reasonable doubt that the defendant[] had guilty knowledge.") (quoting United States v. Flaherty, 668 F.2d 566, 579 (1st Cir. 1981)) (emphasis added).

The latter inference, wholly warranted on a commonsense assessment of the entire trial record, see supra section I, afforded adequate evidentiary support for a critical companion inference as well: that the extreme countersurveillance measures resorted to by Arias, in attempting to detect and/or "shake" any mobile surveillance by competing drug dealers or by law enforcement officers, were prompted by Arias' guilty knowledge that he and Moscoso were mutually embarked upon their heroin distribution mission en route to the planned meeting with

10

"Miguel" at the Providence Pizza Palace; hence, the otherwise inexplicable countersurveillance activities repeatedly engaged in by the blue Volkswagen, driven by Arias, as observed by the narcotics detectives conducting the surveillance.

B.   **The Aiding and Abetting Verdict**

We must affirm the aiding and abetting verdict unless no rational juror could have found, beyond a reasonable doubt, that (i) Moscoso intended to <u>distribute</u> <u>to</u> "Miguel" the large cache of heroin in his jacket pocket; and (ii) Arias "'consciously shared' [that] criminal design, associated himself with it, and actively sought to ensure its success." <u>Mangual-Corchado</u>, 139 F.3d at 44 (citations omitted). The one matter meriting limited discussion in the instant context is whether there was enough evidence to establish, beyond a reasonable doubt, that Arias "consciously shared" the criminal purpose plainly harbored by Moscoso.

We need not belabor the point. The identical circumstantial evidence and credibility assessments which permitted the jury to determine, beyond a reasonable doubt, that Arias conspired with Moscoso to possess the heroin for distribution to "Miguel," <u>see</u> II(A) <u>supra</u>, sufficed as well to establish, beyond a reasonable doubt, that Arias consciously shared and sought to further Moscoso's intention to <u>distribute</u>

11

the heroin to "Miguel," by <u>transporting</u> Moscoso to the Providence Pizza Palace, where Moscoso was to meet "Miguel."

## III

## <u>CONCLUSION</u>

For the foregoing reasons, the judgments of conviction are affirmed.[3] **SO ORDERED.**

---

[3]Arias further claims he is entitled, at the very least, to an offense-level reduction, pursuant to U.S.S.G. § 3B1.2, on the grounds that (i) he merely drove the car in which Moscoso was transporting the heroin, and (ii) Moscoso was "the brains," as the district court itself observed at one point. Although we assume <u>arguendo</u> that the failure to afford such a reduction <u>sua sponte</u> is subject to plain error review — Arias admits he did not request such a reduction — nothing in the evidence before us indicates that it was error not to afford the reduction.