Johnson et al. v. Collins et al.      CV-02-531-B  01/23/04


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Richard Johnson, et. al.**

   v.                              Civil No.  02-531-B
                                   Opinion No. 2004 DNH 024
**Rodney C. Collins, et. al.**


MEMORANDUM AND ORDER


Richard and Maria Johnson and their son, Andrew, have sued Newmarket Police Chief Rodney C. Collins and the Town of Newmarket under 42 U.S.C. § 1983 and various state laws.  The Johnsons claim that Collins improperly obtained and executed a warrant to seize Andrew Johnson's computers, arrested Johnson without probable cause for allegedly making a bomb threat and defamed him and his parents by conducting a "public campaign" of false accusations that led to Johnson's expulsion from school. The defendants seek summary judgment.


I.  BACKGROUND

## A. The Search

On September 24, 2001, Collins received a tip from Fremont Police Chief, Neal Janvrin, that Johnson and another student, Dan Gray, had bragged about using Johnson's computer to "hack" into classified files maintained by the Federal Bureau of Investigation ("FBI"). Collins used Janvrin's information to obtain a warrant to seize Johnson's computer.

The affidavit that Collins submitted with his warrant application states that Janvrin obtained his information from an unnamed informant. The informant told Janvrin that Johnson had bragged about viewing confidential "FBI profiles" and that he and a friend, Dan Gray, had gained access to the profiles by using Johnson's computer to "hack" into FBI files. The informant claimed that Johnson had used a MacIntosh computer and had drilled a hole in the floor of his bedroom so that he could gain access to a telephone line. The informant also gave street addresses for Johnson and Gray and claimed that Johnson's father was a member of the Newmarket School Board. Janvrin told Collins

that the informant was "a very 'reliable and credible person' who he is personally familiar with." (Defs.' Mem. Supp. Summ. J. Ex. D). He also claimed that the informant had "no ax to grind." (Id.)

Collins determined that the informant had provided correct street addresses for Johnson and Gray and had correctly claimed that Johnson's father was a member of the Newmarket school board. Collins also verified through a Newmarket school official that Johnson was "extremely intelligent and computer literate." (Id.)

Collins executed the search warrant on September 25, 2001. Three computers and several computer-related items were seized. The seized items were examined by the FBI but no charges were brought against Johnson for hacking into FBI files.

## B. The Bomb Threat

On February 7, 2002, a bomb threat was found by a teacher at the Newmarket Junior-Senior High School where Andrew was then a student. Although the police received an anonymous letter suggesting that Johnson was somehow involved, he was not interviewed by the police.

School officials discovered a second bomb threat on the morning of March 8, 2003. The threat, written on a science room chalkboard, read, "This one's for real. There is a bomb that will explode between 9:00 a.m. and 1:00 p.m. Have a nice life." (Defs.' Mem. Supp. Summ. J. Ex. K). The room where the threat was found had been vandalized. Several computer and television wires had been cut, the fire alarm had been destroyed, and the teacher call-box had been pulled off the wall.

Joe Flaherty, a teacher, told a Newmarket police officer that he had seen Johnson wandering the hallways twice in the late afternoon of March 7, 2002. The school principal, Deborah Brooks, also stated that she had seen Johnson leave the school that day around 4:30 p.m. Sean Alperin, a student, stated that he had observed Johnson and Gray near the science room after school on March 7, 2002. Alperin told police that when he asked them what they were doing, Gray stated, "we did something pretty funny but we won't say because we could get into trouble." (Id.) Gray told police that Johnson had gone into the science room around 3:15 p.m. and told him to make sure no one came in. Gray stated that he had observed Johnson cut some computer wires with

-4-

scissors and then write something on the chalkboard.  Gray further stated that he could not see what Johnson had written but he did observe Johnson walk away from the chalkboard wiping chalk dust off his hands.  During a subsequent interview, Gray added that Johnson had admitted writing the threat.

On March 14, 2002, the Newmarket police received an anonymous tip that Johnson was involved in the March 7th bomb threat.  That same day Collins obtained Johnson's fingerprints by warrant.  Five of six latent fingerprints taken from the chalkboard failed to match Johnson's prints; the sixth impression was inconclusive.  Collins did not seek fingerprint impressions from anyone else.

On April 28, 2002, Collins submitted a sworn affidavit seeking an arrest warrant for Johnson.  The affidavit summarized the facts surrounding both bomb threats and the police interviews of Johnson, Gray, and Alperin, but did not include the results of the fingerprint analysis.  The judge issued the warrant and Johnson was arrested at school on April 29, 2002, for criminal mischief and for falsely reporting a bomb threat.  Johnson was later convicted of vandalizing school equipment.  The court

dismissed the charge involving the bomb threat.

## C. **The Expulsion**

Johnson was suspended for 20 days following his arrest and on June 4, 2002, the Newmarket School Board voted to expel Johnson for the balance of the school year for "gross misconduct." (Pls.' Compl. ¶ 90). After the charge involving the bomb threat was dismissed, Superintendent Denis Joy allowed Johnson to conditionally return to school on August 28, 2002. One condition was that Johnson would be expelled if he committed any offense calling for suspension from school. On October 4, 2002, Johnson violated a computer-use policy which called for a one-day suspension, and Joy summarily expelled Johnson from school.

On August 17, 2002, Johnson's parents asked the school board to reverse the June 4, 2002 expulsion order. Collins sent a rebuttal letter to Joy, in which he referred to Johnson as "a safety threat", "their lying son, Andrew" and "a calculating liar." (Defs.' Mem. Supp. Summ. J. Ex. F). In August and September 2002, Collins also gave interviews and wrote guest columns for local news publications. In these publications,

Collins referred to Johnson (although not by name) as a safety threat to the school, and publicly advocated against Johnson's reinstatement. The Johnsons allege that Joy expelled Johnson based on a public campaign by Collins to defame them and to keep Johnson out of Newmarket Junior-Senior High School.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A trial is only necessary if there is a genuine factual issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. See id. at 248.

In ruling on a motion for summary judgment, I must construe the evidence in the light most favorable to the non-movant. See

Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001). The party moving for summary judgment, however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the non-moving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citation omitted). Neither conclusory allegations, improbable inferences, or unsupported speculation are sufficient to defeat summary judgment. See Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

## III. DISCUSSION

### A. Federal Claims - Collins

#### 1. The qualified immunity standard

Collins claims that he is entitled to qualified immunity

with respect to plaintiffs' federal claims.

"The doctrine of qualified immunity protects 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mutter v. Town of Salem, 945 F. Supp. 402, 405 (D.N.H. 1996) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A two-part inquiry is used to determine whether an officer is entitled to qualified immunity. First, I consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right. Santana v. Calderon, 342 F.3d 18, 23 (1st Cir. 2003) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). If a constitutional violation is established, I then determine whether "the contours of this right are 'clearly established' under then-existing law so that a reasonable officer would have known that his conduct was unlawful." Id. (quoting Dwan v. City of Boston, 329 F.3d 275, 279 (1st Cir. 2003). If the law would not have put a reasonable officer on notice that his or her conduct was

unlawful, summary judgment based upon qualified immunity is appropriate. See Kelley v. Laforce, 288 F.3d 1, 6 (1st Cir. 2002); See also Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

2. Search Warrant Claim

The Johnsons contend that the warrant Collins obtained to seize Johnson's computer was not supported by probable cause. They further argue that Collins is not entitled to qualified immunity with respect to this claim because a reasonable police officer in Collins's position would have understood that the warrant had been improperly issued.

When ruling on the sufficiency of a search warrant application, the court must consider the "totality of the circumstances" described in the supporting affidavit. United States v. Beckett, 321 F.3d 26, 31 (1st Cir. 2003). Deference should be given to reasonable inferences that the issuing judge could have drawn from the affidavit. See id. Among the factors that a reviewing court will consider in determining whether information supplied by an unnamed informant is sufficient to

support a probable cause determination are:

> [w]hether an affidavit supports the probable veracity
> or basis of knowledge of persons supplying hearsay
> information; whether informant statements are self-
> authenticating; whether some or all of the informant's
> factual statements were corroborated wherever
> reasonable and practicable . . .; and whether a law
> enforcement affiant included a professional assessment
> of the probable significance of the facts related by
> the informant based on experience or expertise.

United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002)

(quoting United States v. Khounsavanh, 113 F.3d 279, 284 (1st

Cir. 1997)).

Collins relied primarily on information supplied by

Janvrin's informant to support the issuance of the warrant. This

reliance was misplaced, however, because the judge who issued the

warrant could not determine from the application whether the

informant's information was based on first-hand knowledge or mere

rumor. This deficiency is fundamental and cannot be overcome by

the other information on which Collins relied.

Although Collins cited Janvrin's opinion that the informant

was highly reliable, his affidavit fails to identify any evidence

of past reliability against which the opinion could be tested.

As the First Circuit recently remarked in this regard, "[a] mere

assertion of reliability without any information regarding the basis for the officer's belief, such as past tips leading to arrests, is entitled to only 'slight weight.'" Barnard, 299 F.3d at 93 (citing to Khounsavanh, 113 F.3d at 286). Such unsubstantiated assertions of reliability are even less useful in a case like this where the application does not explain how the informant acquired her information.

Collins's attempt to corroborate the informant's claims also fails to bolster the informant's reliability because he was only able to corroborate innocent details. See Khounsavanh, 113 F.3d at 284 (corroboration of innocent details "do not demonstrate that the informant has a legitimate basis for knowing about the defendant's allegedly criminal activity"). Since the application fails to point to any other evidence to support Collins's claim that Johnson's computers contained evidence of illegal activity, it failed to establish probable cause to justify the issuance of the warrant.

The Johnsons cannot prevail, however, merely by establishing that the warrant was not supported by probable cause. Under well-established precedent, Collins will be entitled to immunity

unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Rodrigues v. Furtado, 950 F.2d 805, 812 (1st Cir. 1991) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The Johnsons cannot meet this difficult standard because the affidavit contains enough incriminating information to permit a reasonable police officer to mistakenly conclude that the issuing judge acted properly in issuing the warrant. While I have determined that Janvrin's opinions concerning the informant's reliability and Collins's successful corroboration of several of the informant's assertions were not sufficient to establish the informant's reliability, I cannot say that a reasonable officer necessarily would have identified these deficiencies. When an impartial judge decides that a warrant application is supported by probable cause, and the affidavit submitted with the application alleges facts that provide a plausible basis for the issuance of the warrant, an officer who mistakenly relies on the issuing judge's probable cause determination cannot be held personally liable for executing a defective warrant. This is the case here.

3. Unlawful Arrest Claim

The Johnsons argue that Collins is liable for Johnson's illegal arrest on the bomb threat charge because he failed to inform the judge who issued the arrest warrant that fingerprint impressions taken from the chalkboard on which the bomb threat had been written did not match Johnson's fingerprints. When a police officer leaves relevant material out of an affidavit in support of an arrest warrant, the court must determine whether there remains "'sufficient content in the warrant affidavit to support a finding of probable cause.'" Mutter v. Town of Salem, 945 F. Supp. 402, 407 (D.N.H. 1996) (quoting Franks v. Delaware, 438 U.S. 154, 171-72 (1978)).

Although Collins should have referenced the fingerprint report in his application for the arrest warrant, his omission does not undermine the other evidence contained in the affidavit which was more than sufficient to support a finding of probable cause. See Mutter, 945 F. Supp. at 407. In seeking an arrest warrant, Collins relied on (1) the anonymous letter indicating that Johnson had been involved in the February 7th bomb threat; (2) statements of a teacher, the principal, and two students that

Johnson had been near the room where the March 7th threat was found; (3) an anonymous tip indicating that Johnson had been involved in the second bomb threat; and (4) Gray's statements that he had observed Johnson in the science room on March 7, 2002 cutting several computer and televison wires with scissors, that he had observed Johnson pick up a piece of chalk and write something on the board and then walk away from the board, wiping chalk dust off his hands, and that Johnson had admitted writing the bomb threat.

Even if Collins had provided the results of the fingerprint analysis to the issuing judge, the facts stated above would have created sufficient probable cause to support the arrest warrant. Because the arrest warrant was supported by probable cause, Collins did not violate Johnson's constitutional rights by arresting him on the bomb threat charge. Collins is therefore entitled to qualified immunity on the unlawful arrest claim. See Santana v. Calderon, 342 F.3d 18, 23 (1st Cir. 2003).

4. Constitutional Defamation Claim

The Johnsons claim that Collins violated their rights under the Fifth and Fourteenth Amendments by embarking on a public

campaign to malign the Johnson family and prevent Johnson from attending school. I understand them to be asserting a constitutional claim for defamation.

The United States Supreme Court has held that a government official's defamatory statements are not sufficient, standing alone, to support a constitutional claim. See Paul v. Davis, 424 U.S. 693, 701-02 (1976). In response, the lower federal courts have developed a "stigma plus" test to evaluate such claims. See, e.g., Hawkins v. R.I. Lottery Comm'n, 238 F.3d 112, 115 (1st Cir. 2001). Under this test, the defamation must be coupled with the loss of an important benefit such as government employment. See id. Moreover, to be liable on a stigma plus claim, the defendant must be responsible for both the defamation and loss of the government benefit. See id. at 116 (rejecting claim against governor because he did not participate in employment termination decision). Johnson cannot satisfy this requirement because Collins did not participate in the school board's decision to expel Johnson. Accordingly, Collins is entitled to qualified immunity with respect to the constitutional defamation claim.

## B.  Federal Claims - Newmarket

The Johnsons seek to hold Newmarket liable for Johnson's allegedly unconstitutional conduct.

In order to state a § 1983 claim against a municipality or a municipal subdivision, a plaintiff must allege that: (1) a municipal policymaker intentionally adopted a policy, implemented a training protocol, or allowed a custom to develop; (2) the challenged policy, training protocol or custom caused a violation of the plaintiff's constitutional rights; and (3) the policymaker acted either with deliberate indifference or willful blindness to the strong likelihood that unconstitutional conduct will result from the implementation of the policy, training protocol or custom. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 582 (1st Cir. 1994); Manarite v. Springfield, 957 F.2d 953, 958 (1st Cir. 1992).

I have determined that Collins did not violate Johnson's constitutional rights when he arrested him on the bomb threat charge and when he allegedly defamed him. Accordingly, plaintiffs' attempts to hold Newmarket liable for the same

-17-

alleged misconduct necessarily fail. See Evans v. Avery, 100 F.3d 1033, 1040 (1st Cir. 1996). This leaves only plaintiffs' claim that Newmarket is liable for Collins' illegal seizure of Johnson's computers.

In certain circumstances, a municipality may be subject to liability for a single unconstitutional act by a municipal policymaker. See Kelley, 288 F.3d at 9. The municipality will be liable, however, only when the "decisionmaker possesses final authority to establish municipal policy with respect to the action . . . ." Id. (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality opinion). Collins has admitted that he is a municipal policymaker with respect to all law enforcement issues, including decisions to apply for and execute search warrants, and it does not appear that Newmarket can credibly dispute this point. Thus, it is not entitled to summary judgment with respect to plaintiffs' claim challenging the seizure of Johnson's computers because I have determined that the seizure was unlawful.

C. **State Law Claims**

The Johnsons assert a variety of state law claims that are

unrelated to the only federal claim that remains viable. Because the parties are not diverse, I have jurisdiction over the state law claims only to the extent that they are supplemental to the remaining federal claim. See 28 U.S.C. § 1367. Because it appears that the state law claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction," 28 U.S.C. § 1367(c)(2), I propose to sever the state law claims and dismiss them without prejudice so that the Johnsons can litigate them in state court.

## IV. CONCLUSION

I grant defendants' motion for summary judgment with respect to: (1) plaintiffs' federal claims against Collins in his individual capacity; and (2) plaintiffs' federal claims against Newmarket for Johnson's arrest and Collins's alleged campaign of defamation. I deny the motion with respect to plaintiffs' claim against Newmarket based on the illegal seizure of Johnson's computers. I propose to deny defendants' motion for summary judgment with respect to plaintiffs' state law claims and dismiss those claims without prejudice to both plaintiffs' right to

-19-

litigate them and defendants' right to challenge them in state court.  Any party objecting to the proposed disposition of plaintiffs' state law claims shall file an objection and a supporting memorandum on or before February 6, 2004.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

January 23, 2004

cc:  Paul McEachern, Esq.
     William G. Scott, Esq.