# United States Court of Appeals
## For the First Circuit

No. 02-2303

UNITED STATES OF AMERICA,

Appellee,

v.

IVAN VAZQUEZ-ALOMAR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Selya, Circuit Judge,

Stahl, Senior Circuit Judge,

and Lynch, Circuit Judge.

José R. Franco and José R. Franco Law Office on brief for appellant.
H.S. Garcia, United States Attorney, Sonia I. Torres-Pabón, Chief, Criminal Division, and Nelson Pérez-Sosa, Assistant United States Attorney, on brief for appellee.

August 22, 2003

**SELYA**, **Circuit Judge**.  Constancy is a virtue, and he who vacillates often pays a price for his indecision.  This sentencing appeal illustrates the point.

We extract the relevant facts from the plea agreement, the change-of-plea colloquy, the transcript of the disposition hearing, and the documents in the record.  See United States v. Martinez-Vargas, 321 F.3d 245, 247 (1st Cir. 2003); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

Defendant-appellant Ivan Vazquez-Alomar has a history of trouble with the law.  Pertinently, he pled guilty to federal drug trafficking and money laundering charges on June 11, 1999.  The United States District Court for the District of Puerto Rico sentenced him to serve a 70-month incarcerative term in a federal correctional facility.  On May 24, 2000, he pled guilty in the same court to additional drug-trafficking violations and to transporting firearms.  He received a 78-month sentence, to be served concurrently with his previous sentence.

The charges underlying this appeal stem from a protracted investigation by federal agents into the laundering of drug proceeds.  This probe revealed that for a period of roughly ten months commencing around December of 1998, the appellant participated in the laundering of drug money within the United States and abroad.  On August 21, 2000, a federal grand jury sitting in the District of Puerto Rico returned an indictment

charging the appellant (who was then incarcerated as a result of the sentences imposed in June 1999 and May 2000) with money laundering in violation of 18 U.S.C. §§ 1956-1957.

Immurement did not check the appellant's penchant for criminal activity. In November of 2000, while still incarcerated, he engaged in telephone conversations concerning money laundering and the importation and distribution of multi-kilogram quantities of cocaine. He did not inform the authorities of these conversations, as federal law requires. See id. § 4.

On November 21, 2001, the grand jury returned a superseding indictment that charged the appellant with, inter alia, conspiracy to commit money laundering.[1] Id. §§ 1956(a)(1)(A)(i), 1956(a)(2)(A), 1956(h), 1957. After initially proclaiming his innocence, the appellant entered a guilty plea to the money laundering count on May 1, 2002. On the same date, the government charged him, by information, with misprision of a felony, id. § 4 — a charge based on the in-prison telephone calls. The appellant pled guilty to that charge as well.

Coincident with these developments, the parties entered into a non-binding plea agreement (the Agreement). See Fed. R. Crim. P. 11(e)(1)(C). The Agreement spelled out certain proposed offense level adjustments and, based on those stipulations,

---

[1]The indictment also contained drug-related charges, but those charges were later dismissed. Accordingly, they need not concern us.

-3-

memorialized an agreement "that the appropriate disposition of this case" would be a sentence of 135 months' imprisonment.  The length of this proposed sentence derived from the following calculation (made by the government, acquiesced in by the appellant, and eventually adopted by the district court).  The calculation started with the base offense level for laundering monetary instruments: level 23.   USSG §2S1.1(a)(1).[2]   The base offense level was increased by six levels because the funds in question exceeded $2,000,000.  Id. §2S1.1(b)(2)(G).  Three more levels were added due to the appellant's knowledge that the funds represented the proceeds of an unlawful activity involving the distribution of controlled substances.  Id. §2S1.1(b)(1).  That subtotal (32) was reduced by three levels for acceptance of responsibility.  Id. § 3E1.1.  Given the appellant's adjusted offense level (29) and criminal history category (III), the projected guideline sentencing range was 108-135 months.  The sentence that the parties agreed to recommend to the court reflected the top of that range.

The parties also agreed (i) that the government would request that the two new sentences (one for money laundering and the other for misprision) be served concurrently;[3] (ii) that "no

---

[2]All references to the sentencing guidelines are to the November 2000 edition, which was in effect when the instant offenses were committed.  See United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990).

[3]The relevant section of the Agreement states that "[t]he United States will request at the time of sentencing that the

further adjustments or departures to the base offense level would be sought;" and (iii) that "any request by [the appellant] for any further guideline adjustments . . . will be considered by the United States as a breach of this [Agreement]." The Agreement neither referred to the appellant's previous crimes nor mentioned his existing incarceration.

At the time that he signed the Agreement, the appellant was represented by two experienced defense lawyers. He subsequently retained yet a third attorney, José R. Franco-Rivera, to work in conjunction with them. If two were company, three proved to be a crowd: on September 3, 2002, Franco-Rivera, without the assent of his two co-counsels, filed a motion seeking to have the new sentence run concurrently with the unexpired portions of the appellant's existing sentences. In this motion, the appellant argued that USSG §5G1.3(b) required that result.[4] In the

_____

sentence imposed in Criminal No. 00-692(CCC) [money laundering] be imposed concurrent with that in Criminal No. 01-379 (JAF) [misprision of a felony]." Because the sentence for money laundering substantially exceeded the sentence for misprision, we henceforth refer to the former as "the new sentence."

[4]USSG § 5G1.3 provides in pertinent part:

(a)  If the instant offense was committed while the defendant was serving a term of imprisonment . . . the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b)  If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant

-5-

appellant's view, his previous drug-trafficking convictions had been fully taken into account in the determination of the offense level for his new sentence by reason of the three-level enhancement for his knowledge that the laundered funds were drug proceeds.

The disposition hearing took place on September 4, 2002. The appellant's three attorneys were present to represent their common client.

The district court first addressed the September 3 motion. The court quickly ascertained that the appellant's original lawyers, Marlene Aponte Cabrera and Rafael Castro Lang, had no input into the filing of that motion. Aponte then stated that she believed the motion contravened the Agreement. Castro concurred with that assessment. The court asked the appellant what he wished to do in view of the fact that the motion was deemed inadvisable by two of his three attorneys. The appellant replied that he desired to "withdraw the motion . . . [and] proceed with the sentencing."

---

offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

(c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

USSG §5G1.3.

Despite this blunt disavowal, the district judge conducted a thorough inquiry. She questioned the government on its interpretation of the Agreement, heard again from the appellant, and listened to his battery of attorneys. In the end, the judge noted that the only mention of concurrent sentences in the Agreement was the linkage between the money laundering and misprision charges, see supra note 3, and that the Agreement made no reference to other criminal cases or sentences. The judge concluded that, under the circumstances, granting the motion would be an "unwarranted modification of the plea agreement" and, therefore, denied it.

From that point forward, the disposition hearing proceeded smoothly. In line with the Agreement, the district court sentenced the appellant to a 135-month incarcerative term for money laundering and a 36-month incarcerative term for misprision of a felony. The court ordered those terms to run concurrently with each other but consecutive to the undischarged portions of the earlier sentences.

On September 12, 2002, the appellant filed a timely notice of appeal. In this venue, he argues that his motion for the imposition of concurrent sentences should not have been denied because the Agreement did not speak to this aspect of the matter and, therefore, granting the motion would not have been inconsistent with the Agreement. Moreover, the applicable

provisions of the sentencing guidelines mandated running the sentences concurrently. See USSG §5G1.3, quoted supra note 4.

The government's first line of defense is that the appellant waived this claim. Waiver is the "intentional relinquishment or abandonment of a known right." United States v. Olano, 507 U.S. 725, 733 (1993) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)); see also United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002). What constitutes a waiver depends in the first instance on the nature of the right at issue. See New York v. Hill, 528 U.S. 110, 114 (2000). Criminal defendants may waive most rights as long as they do so "voluntarily and with knowledge of the general nature and consequences of the waiver." United States v. Teeter, 257 F.3d 14, 21 (1st Cir. 2001). When a criminal defendant identifies an issue and then declines to pursue it, he normally will be deemed to have waived that issue for the purpose of appellate review. See Rodriguez, 311 F.3d at 437; United States v. Ross, 77 F.3d 1525, 1542 (7th Cir. 1996).

The record here is transparently clear that the September 3 motion brought the possibility of a broadly concurrent sentence — one that would have encompassed both the new sentence and the undischarged portions of the earlier terms — squarely before the district court. Having raised the issue, however, the appellant then retreated and stated unequivocally that he wished to withdraw his motion. The appellant's trio of attorneys acquiesced in this

decision (indeed, two of them had opposed the filing of the motion from the moment that they learned of it, and the third — the motion's original proponent — ultimately agreed with this course of action).

The withdrawal of the motion constituted an express waiver, and the appellant is bound by that waiver. See Rodriguez, 311 F.3d at 437; United States v. Mitchell, 85 F.3d 800, 807 (1st Cir. 1996). His appeal therefore fails.

We hasten to add that, even if we were willing to overlook the waiver, the appeal would not bear fruit. Stripped of rhetorical flourishes, the appellant's position is that the lower court had the duty to make his new sentence run concurrently with the unexpired portions of his earlier sentences. This position is simply wrong.

The Agreement is silent (and, therefore, not dispositive) as to how the appellant's new sentence should be aligned with the unexpired portions of his earlier sentences. For present purposes, however, the important fact is that nothing in the Agreement demands that the court run the sentences concurrently. By like token, nothing in the sentencing guidelines requires such an outcome. We explain briefly.

The new sentence was based on the appellant's money laundering conviction. See supra note 3. The appellant's argument depends on the notion that the new sentence gave full effect to the

drug trafficking that formed the basis for his earlier sentences. We disagree: the three-level upward adjustment under USSG §2S1.1(b)(1) was grounded not on the appellant's involvement per se in drug trafficking, but, rather, on his knowledge of illegal activity.[5] See United States v. Rivera-Rodriguez, 318 F.3d 268, 278-79 (1st Cir. 2003); United States v. Bierd, 217 F.3d 15, 23 (1st Cir. 2000); cf. United States v. Lombardi, 5 F.3d 568, 571 (1st Cir. 1993) (holding that mail fraud and money laundering convictions should not be grouped even though offense level for money laundering was increased based on defendant's knowledge that funds were proceeds of mail fraud). It is, therefore, readily evident that the earlier sentences did not result from conduct that had been "fully taken into account in the determination of the offense level for the [offense of conviction]." USSG §5G1.3(b).

In situations, like this one, that are not covered by the first two subsections of USSG §5G1.3, subsection (c) applies. Under this proviso, the court, in its discretion, may impose a sentence concurrently, partially concurrently, or consecutively. See id. §5G1.3(c), cmt. (n.3). The end result need only be "reasonable." United States v. Caraballo, 200 F.3d 20, 28 (1st Cir. 1999). The default rule in such situations is for the

---

[5]The relevant guideline provides that "[i]f the defendant knew or believed that the [laundered] funds were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics," the sentencing court should boost the offense level by three levels. USSG §2S1.1(b)(1).

sentences to run consecutively. <u>See</u> 18 U.S.C. § 3584(a); <u>see</u> <u>also</u> <u>United States</u> v. <u>Quinones</u>, 26 F.3d 213, 216-17 (1st Cir. 1994); <u>United States</u> v. <u>Flowers</u>, 995 F.2d 315, 316-17 (1st Cir. 1993).

In this instance, the district court hardly can be faulted for following the default rule. After all, the court had good reason to conclude that granting the concurrent sentence motion would impugn the spirit, if not the letter, of the Agreement. The Agreement mentioned only the offenses of conviction (money laundering and misprision of a felony) and provided that the sentences for those two crimes should run concurrently with each other. Given that level of specificity, it was reasonable for the district court to conclude that the parties did not intend to have those sentences run concurrently with the unexpired portion of any previous sentence.

This conclusion is bolstered by three facts. First, the Agreement included a standard integration clause signifying that it contained the entire agreement among the parties and their counsel. Second, the Agreement explicitly warned that "[t]he United States has made no promises or representations except as set forth in writing in this plea agreement and den[ies] the existence of any other term . . . not stated here." Third, the concurrent sentence motion, if granted, would have resulted, as a practical matter, in a considerably more lenient sentence than that called for by the Agreement — a result that would seem odd given the government's

extraction of a promise that the appellant would seek no further guideline adjustments or departures.

To say more would be to paint the lily. USSG §5G1.3(c) governs here, and the district court had discretion as to whether to make the new sentence run concurrently or consecutively vis-à-vis the undischarged portions of the earlier sentences. On this record, the sentencing court had ample reason to deny the motion and hold the appellant to the spirit of the Agreement. Any claim that the court abused its discretion in following that course would be an exercise in futility.

We need go no further. The record reveals that the district court appropriately questioned the appellant and his phalanx of attorneys regarding the concurrent sentence motion and gave the appellant a choice as to how to proceed. The appellant elected to withdraw the motion. Given that explicit election, the doctrine of waiver bars the appellant's belated attempt to resurrect the issue on appeal. In any event, the lower court acted well within the realm of its discretion in refusing to shape its sentence to fit the contours proposed in the concurrent sentence motion.

**Affirmed**.