Afshar v. Pinkerton Academy          CV-03-137-JD  09/07/04

UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Foad Afshar

     v.                               Civil No. 03-137-JD
                                      Opinion No. 2004 DNH 130
Pinkerton Academy


                         O R D E R


     Foad Afshar brings a claim against his former employer,

Pinkerton Academy, alleging discrimination based on his national

origin and his perceived religion in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  Pinkerton

Academy moves for summary judgment, asserting that Afshar cannot

show that his contract was not renewed because of either his

nationality or his perceived religion.  Afshar objects.


                        Background

     Foad Afshar is a native of Iran and immigrated to the United

States in 1977 when he was seventeen years old.  He graduated

from the University of Massachusetts with a degree in psychology

in 1982, earned a Master's degree from Harvard University in

1986, and earned a Ph.D. from California Coastal University in

2002.  He worked in the administration of guidance and special

education departments in New Hampshire Schools beginning in 1994.

He was hired by Pinkerton Academy on July 1, 1999, to serve as

Director of the Guidance Department.

Afshar replaced Robert Scully who had been the Guidance Director at Pinkerton Academy for seventeen years before he retired after the 1998-1999 school year. In making the hiring decision, the administration at Pinkerton was looking for someone who would reorganize the department, require more accountability from the counselors within the department, and make them work as a team. They discussed those objectives with Afshar during the interview process, and they liked his ideas for reorganization.

Soon after he started, several Guidance Department employees made complaints about Afshar. They objected to his style and reorganization of the department. Headmaster Bradford Ek assigned Assistant Headmasters Nick Ithomitis and John Muller to investigate the complaints. Because some of those who had complained said that they felt harassed by Afshar, Ithomitis and Muller began a formal harassment investigation.

On April 4, 2000, they submitted a report to Headmaster Ek of their findings and recommendations. In the report, Ithomitis and Muller found no harassment and that the counselors' complaints that he had created a hostile work environment were unfounded. They concluded that Afshar was the appropriate person to lead the department on the condition that he adjust his leadership style by using more tact and diplomacy and being more

discreet with his use of humor.  The report also stated that Afshar would need the full support of the headmaster and the administration.  An "Overview" that was prepared along with the report states that counselors in the Department "fail to accept legitimate criticisms," believe that all recommended changes are wrong, and that three to five counselors "will simply be unable to work for/with Mr. Afshar under any conditions."  Pl. Ex. 2.

Three counselors resigned at the end of the year.  The administration had expected them to leave, thought it was not a loss, and felt that it would aid the reorganization of the Department.  Despite the complaints and the resignations, Afshar received a favorable review that year, with comments suggesting that he had worked under very adverse circumstances and nevertheless had done well.  His employment contract was renewed for a second year.

Afshar's second year, 2000-2001, was uneventful.  He heeded the recommendations that he change his management style to be more tactful and diplomatic.  No complaints were made against him.  His evaluation at the end of the year was again positive and even showed improvement from the first year.  Although more Guidance Department staff resigned at the end of the 2000-2001 school year, that summer Assistant Headmaster Ithomitis offered Afsar a new administrative position to oversee both the Guidance

3

and Special Education Departments.  Afshar declined the promotion because it required reorganization of the Special Education Department.

The 2001 school year began well.  However, Afshar perceived a distinct change in the administration and his colleagues after the terrorist attacks of September 11, 2001.  He noted that he was not included in the school's handling of the tragedy of September 11.  Shortly thereafter, at the request of Assistant Headmaster Mary Anderson, administrator Ruth Murray asked Afshar to bring in his "green card," claiming that it had expired.  Afshar's "green card" had not expired; instead, his employment authorization form had expired.  Anderson explained in her deposition that she had checked Afshar's personnel records only because they were trying to hire someone from England and wanted to see what forms were needed to hire a non-citizen.

On September 18, 2001, three counselors complained to Ithomitis about Afshar.  They contended that two comments Afshar made during a parent meeting were inappropriate, that they did not have an opportunity to review the senior college admissions packet before it was printed, that he was autocratic, dishonest, and demeaning, and that they feared retaliation for their complaints.  Ithomitis discussed the complaints with Afshar, who disagreed with them.  On September 26, a counselor who had made a

4

complaint against Afshar during his first year at Pinkerton, charged him with harassment. Afshar informed Assistant Headmaster Anderson that the same counselor had accused him of "terrorizing" the Department, which he believed to be a reference to September 11 that he found offensive.

Anderson and Assistant Headmaster Ken Wiswell investigated Afshar's complaint against the counselor and her harassment complaint against him and submitted a report to Headmaster Ek on October 11, 2001. The counselor denied making the "terrorizing" remark to Afshar, and Anderson and Wiswell found no witnesses to the remark. They concluded that there was insufficient evidence to pursue Afshar's complaint.[1]

They also found no evidence of harassment to support the counselor's charge against Afshar. They concluded, however, that problems again existed in the department because of Afshar's leadership style and management. Anderson and Wiswell stated in their report that there was a "serious problem" with Afshar's leadership and that there was "widespread (to the point of near unanimity) high level of discontent that threatens the effectiveness of the department." Def. Ex. 12. Based on the

---

[1]The counselor gave a different version of her remark in which she claimed to have said that "there is enough terror occurring in the outer world we don't need additional anxiety in the school setting in our department." Def. Ex. 10.

notes kept by Wiswell and Anderson, the counselors they interviewed expressed some positive personal feelings about Afshar but also indicated that problems existed with Afshar's management style and in his relationships with people in the department. Some of those interviewed stated that they believed people in the department were actively working or conspiring against Afshar. Several of the counselors suggested that the problems between Afshar and others might arise from his culture.

In early 2002, Headmaster Ek began the process of deciding whether to renew Afshar's contract for the next year. He considered the fourth year of employment to constitute an informal tenure because of the process required before a contract could be non-renewed after the fourth year. On February 1, 2002, Ek completed an evaluation form in which he checked the "not recommended" comment and explained that Afshar had "[i]ssues with management skills, [i]ssues dealing with parents, and problems with staff which are not all his fault." Def. Ex. 14. Ek sought input from other members of the administration about whether to renew Afshar's contract. On March 11, 2002, during an administrative team meeting, all agreed that Afshar's contract should not be renewed.

Ek recommended to the Faculty Committee of the Board of Trustees that Afshar's contract not be renewed for the reasons

stated on the evaluation form completed on February 1, 2002.  The Committee accepted that recommendation on March 21, 2002.  In August of 2002, Ek met with Afshar and his counsel and explained that his contract was not renewed because of the numerous complaints filed by the Guidance Department staff.  Afshar filed a complaint with the Equal Employment Opportunity Commission, which issued a right to sue letter on January 13, 2003.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.

## Discussion

Pinkerton Academy repeatedly expresses its outrage and incredulity that Afshar would assert he was the victim of discrimination and insists that Afshar's contract was not renewed because of his job performance. Pinkerton seeks summary judgment and an award of attorneys' fees. In response, Afshar meticulously dissects the factual record, asserting that the circumstances under which Headmaster Ek recommended that his contract not be renewed support an inference of discrimination based on his national origin.[2] Despite Pinkerton's adamant disavowal of any discriminatory intent, this case cannot be resolved on summary judgment.

Title VII prohibits discrimination in employment based on, among other things, national origin and religion. § 2000e-2(a)(1). For purposes of deciding a motion for summary judgment on a Title VII claim when the record does not include direct evidence of discrimination, the court applies "the well-established McDonnell Douglas-Burdine-Hicks burden-shifting framework." Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st

---

[2]Afshar also alleged that Pinkerton's discrimination was based on a misperception that he was a Muslim when he is a member of the Bahai faith. For purposes of summary judgment, that part of Afshar's claim is indistinguishable from his claim of national origin discrimination and is not discussed separately.

Cir. 2003). Under that framework, if the plaintiff establishes a prima facie case, an inference of discrimination arises that the employer may rebut with a legitimate, non-discriminatory reason for its decision. Kosereis v. Rhode Island, 331 F.3d 207, 212 (1st Cir. 2003). "If the employer can state such a reason, the inference of discrimination disappears and the plaintiff is required to show that the employer's stated reason is a pretext for discrimination." Id.

To make a prima facie case, a plaintiff must provide evidence that "(1) he is a member of a protected class; (2) he was qualified for the job; (3) the employer took an adverse employment action against him; and (4) the position remained open or was filled by a person with similar qualifications." Id. at 213; accord Benoit, 331 F.3d at 273. The showing necessary to establish a prima facie case is not onerous. Id. The more difficult issue in most cases, as here, is whether the employer's proffered reasons for taking an adverse employment action are pretextual. See, e.g., Candelario Ramos v. Baxter Healthcare Corp., 360 F.3d 53, 56 (1st Cir. 2004).

"An assertion of pretext requires an examination of the employer's articulated reason for termination." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47 (1st Cir. 2002). Pretext may be established in a variety of ways including by showing that

9

the employer treated the plaintiff differently than other similarly situated employees or that the employer's explanations for its decision were false. Che v. Mass. Bay Trans. Auth., 342 F.3d 31, 39-40 (1st Cir. 2003). Discrimination may be inferred from the plaintiff's prima facie case combined with "compelling proof of the pretextual nature of the employer's explanation." Rathburn v. Autozone, Inc., 361 F.3d 62, 72 (1st Cir. 2004).

In this case, Afshar has met the requirements of a prima facie case. As an Iranian, Afshar is a member of a protected class. He was qualified for his job, as is evidenced by his positive evaluations in 2000 and 2001 and the offer of a promotion in the summer of 2001. Pinkerton took adverse employment action against him by deciding not to renew his contract. According to Afshar, his position was filled by a non-Iranian woman with inferior qualifications.

Pinkerton's original reasons for not renewing Afshar's contract as expressed by Headmaster Ek, "issues" with management skills, "issues" dealing with parents, and problems with staff that were not entirely his fault, provide a legitimate and non-discriminatory basis for the decision. When those reasons were challenged in the course of discovery in this case, however, Pinkerton offered new reasons or at least expanded versions of those reasons to justify the decision. The explanations and

10

amplifications offered by Pinkerton, in light of the evidence of record, raise an issue as to the credibility of those reasons.

In addition, taking the record evidence in the light most favorable to Afshar, the timing of the complaints after September 11, 2001, and the administration's negative response, in contrast to its confidence in Afshar in August of 2001 and before, raise an issue as to the credibility of the stated reasons. Further, to the extent that Pinkerton argues that its decision to terminate Afshar was necessary to resolve unrest in the Department, even if the unrest was unfounded and due in part to discriminatory animus, that would not be a legitimate basis for terminating him. See Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 85 (1st Cir. 2004).

District courts are cautioned in cases involving employment discrimination to exercise "particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000); accord Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 34 (1st Cir. 2001). The court will heed that advice and concludes that summary judgment is not appropriate in this case.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 18) is denied.

SO ORDERED.

                                                  _____
Joseph A. DiClerico, Jr.
United States District Judge

September 7, 2004

cc:  Linda S. Johnson, Esquire
     Edward C. Mosca, Esquire