TORRUELLA, Circuit Judge,
dissenting.
On May 24, 2001, Osvaldo Caraballo-Rodriguez learned of a conspiracy to commit drug trafficking. That same day, Car-aballo contacted the DEA and told them about the conspiracy, but refused to give his name or those of the other participants in the conspiracy. Caraballo was then convicted, by guilty plea, of misprision of a felony, 18 U.S.C. § 4. Because partial but truthful disclosure of one’s knowledge of a criminal activity is insufficient to sustain a conviction for misprision, I must respectfully dissent.
I. The Supplemental Appendix
Before I reach the substance of Carabal-lo’s appeal, I must first address the issue of the Government’s “supplemental appendix.” This “supplemental appendix” contains information not from Caraballo’s conviction, but from another case initially brought against Caraballo but later dismissed. The Government urges us to consider this information in deciding this case. Our rules of procedure are clear. Fed. R.App. P. 10 states in relevant part:
(a) Composition of the Record on Appeal. The following items constitute the record on appeal:
(1)the original papers and exhibits filed in the district court;
(2) the transcript of proceedings, if any; and
(3) a certified copy of the docket entries prepared by the district clerk.
The material offered by the Government was not part of the original papers or exhibits filed in the district court, nor is it a transcript of the proceedings or a certified copy of the docket entries.[16] Thus, we cannot consider it on appeal. See, e.g., Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 132 (1st Cir.2005); Lewis v. City of Boston, 321 F.3d 207, 215 n. 7 (1st Cir.2003) (“It is elementary, however, that we review the record as it existed at the time the district court rendered its ruling .... ” (emphasis added)). The reasons for this rule are not trivial. The district court is better suited for reviewing evidence and making findings of fact. See Salve Regina College v. Russell, 499 U.S. 225, 233, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) (noting that “the respective institutional advantages of’ a trial court include “the unchallenged superiority of the district court’s factfinding ability”). Because of these institutional advantages, we accord deference to trial court rulings regarding the admissibility of evidence, see, e.g., United States v. Smith, 292 F.3d 90, 99 (1st Cir.2002), and credibility, see, e.g., United States v. Marshall, 348 F.3d 281, 284 (1st Cir.2003). Thus, we require that all evidence first be placed before a district court because an appellate court’s chief competence is not evidentiary review. This is especially true here, where Caraballo raises a number of challenges to the admissibility and credibility of the material the Government seeks to introduce.[17]
*80 Furthermore, the fact that the judge was the same in both criminal cases, or that the dockets are “intertwined” has no effect on this conclusion; we generally do not allow parties in one case to sift through the dockets of other cases to come up with evidence to support their conclusions on appeal. The majority, in reaching its conclusion, cites two cases for the proposition that judges may reach across case lines and disregard evidentiary rules in the sentencing context: United States v. Green, 426 F.3d 64, 66 (1st Cir.2005) (“[T]he district court may consider all the evidence, even if inadmissible under the Federal Rules of Evidence, provided that the information has ‘sufficient indicia of reliability to support its probable accuracy.’ ”) and United States v. Canada, 960 F.2d 263, 267-68 (1st Cir.1992) (approving use of transcripts from codefendant’s trial at sentencing hearing). These cases are unpersuasive for the simple fact that they address sentencing. Caraballo is not challenging his sentence; he is challenging his conviction, and we have not yet disregarded evidentiary rules when reviewing a conviction. In any case, regardless of whether the supplemental appendix is being used to sustain a conviction or a sentence, it was not presented to the district court in Caraballo’s misprision case, and as such, we may not consider it. United States v. Muriel-Cruz, 412 F.3d 9, 12 (1st Cir.2005) (“Absent extraordinary circumstances, not present here, we consult only the record extant at the time the district court rendered its decision.”); United States v. Onyejekwe, No. 94-1772, 1995 WL 397015, at *1 n. 1 (1st Cir. July 6, 1995) (unpublished opinion) (“We note that appellant’s appendix includes many documents which were not filed in the district court — including transcripts of testimony before the grand jury — and are, thus, outside the record. These latter documents, of course, cannot inform our decision [on the appellant’s sentencing appeal].” (citation omitted)). Simply put, the majority offers no compelling reason for us to disregard our consistently applied rule that we only consider evidence presented in the district court. I see no reason to disregard it in this case.[18]
II. Caraballo’s Plea

A. Standard of Review

Before accepting a plea agreement, the Federal Rules of Criminal Procedure require that a district court “determine that there is a factual basis for the plea.” Fed. R.Crim.P. 11(b)(3). Thus, the district court must make a finding that “on the record as it stands at the time of the plea,” it has “a reasoned basis to believe that the defendant actually committed the crime to which he is admitting guilt.” United States v. Matos-Quiñones, 456 F.3d 14, 21 (1st Cir.2006). “The purpose of this requirement is to ‘protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his con *81 duct does not actually fall within the charge.’ ” United States v. Ventura-Cruel, 356 F.3d 55, 59-60 (1st Cir.2003) (quoting Advisory Committee Notes to the 1966 Amendment to Fed. R. Crim P. 11.).
When an appellant pleads guilty and does not move to withdraw his plea on the basis that the district court did not comply with Rule 11, the Supreme Court has held that the appropriate standard of review is plain error. United States v. Vonn, 535 U.S. 55, 58-59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). Thus, Caraballo must demonstrate that “(1) there was error; (2) the error was plain; (3) the error affected the defendant’s substantial rights; and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings.” United States v. Riggs, 287 F.3d 221, 224 (1st Cir.2002).

B. Was There Plain Error?

Caraballo pled guilty to misprision of a felony in violation of 18 U.S.C. § 4, which provides:
Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.
The majority and I are in general agreement on the facts. Caraballo was offered the opportunity to help his partner, a corrupt police officer, with “escorting” cocaine to a drop-point at the Carolina Mall in Puerto Rico. Caraballo called the DEA and told them of the plan, but refused to give his name or the names of those involved.[19]
There is no dispute that Caraballo had knowledge of the “actual commission” of a felony.[20] For the purposes of argument, I will assume that Caraballo did not make the felony known “as soon as possible” to *82 the authorities.[21] The question then is whether Caraballo “concealed” the felony. The majority acknowledges the absence of any act of concealment on Caraballo’s part and instead relies on two theories without any support in the law, which constitutes an overextension of the plain error doctrine, to circumvent the affirmative act requirement.
1. Misprision Requires An Affirmative Act
First, the majority suggests that, in fact, 18 U.S.C. § 4 contains no requirement that a defendant commit an affirmative act of concealment. Thus, the majority attempts to write the word “conceals” out of the statute and suggests that Caraballo can be convicted solely on the basis of (1) knowledge of a felony and (2) inaction. In effect, the majority suggests that 18 U.S.C. § 4 imposes an affirmative duty on every citizen to report any crime that is “known” to them. I agree with the majority that, in general, it would be beneficial to have our citizenry report crimes. See Roberts v. United States, 445 U.S. 552, 558, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (“[Gjross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship.”).
That, however, is not the law. The misprision statute imposes no legal obligation on citizens to report crime, especially where failure to comply with that obligation is criminally punishable.[22] Every court to have considered the issue, including the Supreme Court, has reached the same conclusion. See Roberts, 445 U.S. at 558 n. 5, 100 S.Ct. 1358 (“[The misprision statute] has been construed to require ‘both knowledge of a crime and some affirmative act of concealment or partic *83 ipation.’ ”);[23] Branzburg v. Hayes, 408 U.S. 665, 696 n. 36, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (same); United States v. Bolden, 368 F.3d 1032, 1037 (8th Cir.2004) (“[Misprision] requires proof of ‘affirmative steps’ to conceal a known felony... .”); Itani v. Ashcroft, 298 F.3d 1213, 1216 (11th Cir.2002) (“Misprision of a felony ‘require[s] both knowledge of a crime and some affirmative act of concealment or participation.’” (alteration in.-original)); United States v. Gebbie, 294 F.3d 540, 544 (3d Cir.2002) (holding that an element of misprision is that defendant “took steps to conceal the crime”); United States v. Cefalu, 85 F.3d 964, 969 (2d Cir.1996) (same); United States v. Vásquez-Chan, 978 F.2d 546, 555 (9th Cir.1992) (“that the defendant took an affirmative step to conceal the crime”); United States v. Adams, 961 F.2d 505, 508-09 (5th Cir.1992) (“must commit an affirmative act”); United States v. Goldberg, 862 F.2d 101, 104 (6th Cir.1988) (“[Misprision requires that] the defendant took affirmative steps to conceal the crime of the principal. Mere knowledge of the commission of the felony or failure to report the felony, standing alone, is insufficient to support a conviction for a misprision of a felony.”); United States v. Andrews, 790 F.2d 803, 809 (10th Cir.1986) (“the accused took an affirmative step to conceal the crime”); United States v. Sampol, 636 F.2d 621, 653 (D.C.Cir.1980) (“wilful concealment from the authorities by some affirmative act”); United States v. Kuh, 541 F.2d 672, 676 (7th Cir.1976) (“[Misprision] consists of an act of concealment in addition to failure to disclose, so that the statute did not purport to punish one solely for failure to report facts which he has reasonable fear might lead to his conviction of crime.”). Legal commentators, including those cited by the majority, have been equally unanimous in their understanding that the misprision statute, as it currently stands, “has been uniformly construed to require both active concealment and a failure to disclose.” Christopher Mark Curenton, Comment, The Past, Present, and Future of 18 U.S.C. § k: An Exploration of the Federal Misprision of Felony Statute, 55 Ala. L.Rev. 183, 185 (2003)(“In order for a conviction to be sustained, there must be a concealment— not merely an omission or failure to report criminal activity.”); see also Carl Wilson Mullis, III, Comment, Misprision of Felony: A Reappraisal, 23 Emory L.J. 1095, 1103 (1974) (“Bratton [v. United States, 73 F.2d 795 (10th Cir.1934)] firmly established the necessity of a positive act of concealment for violation of the federal misprision statute.”). The result is that it is fairly plain from the statute that the language “conceals and” requires an affirmative act:
The language is “conceals and does not as soon as may be disclose.” [sic] Some meaning must be given to the words “conceal and.” If it should be held that a failure to disclose is in itself a concealment, then a conviction may be had for a failure to disclose without more, and the words “conceal and” are thus effectively excised from the statute. Following settled rules of construction, we must assume that Congress intended something by the use of the words “conceal and.”
Bratton, 73 F.2d at 797.
Nevertheless, the majority cites United States v. Vázquez-Alomar, 342 F.3d 1 (1st Cir.2003), as providing support for the lack of an affirmative act requirement. I disagree with their reading. Vázquez-Alomar simply stated that the defendant “did *84 not inform the authorities of these conversations, as federal law requires. [18 U.S.C.] § 4.” 342 F.3d at 2. Vázquez-Alomar did not involve any challenge to or question regarding the defendant’s conviction for misprision. This naked citation appears to have been provided merely as background to a case dealing with a defendant’s appeal of the district court’s application of unrelated sentencing guidelines. Id. at 5-6. It is at a minimum difficult to conclude from this brief offhand comment in a sentencing case, unaccompanied by any further explanation, that this Circuit intended to split with over seventy years of pronouncements on the elements of misprision by the Supreme Court and ten other courts of appeal.
The majority also suggests that United States v. Ciambrone, 750 F.2d 1416 (9th Cir.1984), is of little use to Caraballo. In fact, in Ciambrone, the Ninth Circuit found that partial but truthful disclosure of a crime to the police was not the required “affirmative act” for the purposes of the misprision statute. Id. at 1418. This conclusion is logical, given that a partial and truthful disclosure provides the authorities with, at worst, no information, and at best, some helpful information. Accordingly, such disclosures cannot be considered an “affirmative act of concealment.” The majority criticizes Ciambrone on two grounds. First, the majority notes that no other court has followed Ciambrone. But a number of courts have cited Ciambrone for the proposition that an affirmative act of concealment is required. See, e.g., Cefalu, 85 F.3d at 969; United States v. Vásquez-Chan, 978 F.2d 546, 555 (9th Cir.1992); Goldberg, 862 F.2d at 104-105; United States v. Weekley, 389 F.Supp.2d 1293, 1297 (D.Ala.2005). The majority also argues that Ciambrone departs from the common law position that no affirmative act is required.[24] This is true, but the common law position on misprision is of limited relevance because Congress was free to depart from the common law in requiring an affirmative act for the misprision offense. There are no federal common law crimes. Liparota v. United States, 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). Given the unanimity of decisions stating that misprision does require an affirmative act, it is clear that Ciambrone does represent a proper interpretation of the law.
The majority then departs even further from the misprision statute in suggesting that the affirmative act requirement may be excused because Caraballo was a police officer, and he had a duty to report crime under P.R. Laws Ann. tit. 25, § 3102. As an initial matter, the majority’s references to English common law are of questionable relevance to this analysis. It has long been understood that “[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the ease of federal crimes, which are solely creatures of statute.” Liparota, 471 U.S. at 424, 105 S.Ct. 2084; see also United States v. Hudson & Goodwin, 7 Cranch 32, 11 U.S. 32, 33, 3 L.Ed. 259 (1812) (deciding that federal courts could not “exercise a common law jurisdiction in criminal cases.”). That misprision was thought to have been an appropriate charge for derelict officers in fifteenth century England is *85 nothing more than an interesting historical footnote, unless the majority can show that Congress considered and adopted this history in drafting 18 U.S.C. § 4.[25] Modern English law decisions are of even less relevance, as they fail to reflect the common law as it existed when Congress was drafting the misprision statute. Perhaps the majority emphasizes the history of the misprision crime in England because in this country, there is no support in the plain language of the statute or the case law for excusing the affirmative act requirement for police officers.[26] Even the law review note cited by the majority agrees that current law provides no such support. Curenton, supra, 55 Ala. L.Rev. at 185 (“[UJnlike its English counterpart, the phrasing ‘conceals and does not as soon as possible make known’ has been uniformly construed [by American courts] to require both active concealment and a failure to disclose.”).
Even if the Government’s second theory were plausible, it suffers from an additional serious defect. The class of people in this country with some sort of duty to report crime is quite numerous. See, e.g., 28 U.S.C. § 547 (“[EJach United States attorney, within his district, shall — (1) prosecute for all offenses against the United States.”); Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1480 (9th Cir.1996) (“[AJ11 federal employees labor under a duty to report fraud against the government.”). Although many officers of the Government labor under such a duty to report wrongdoing, it is clear from Supreme Court precedent that these duties to report crime are not absolute. With respect to police officers, there is a “deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands.” Town of Castle Rock v. Gonzales, 545 U.S. 748, 760-61, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). In fact, in Town of Castle Rock, the Court explicitly stated that duty-to-report statutes (such as P.R. Laws. Ann. tit. 25, § 3102) “clearly do not mean that a police officer may not lawfully decline to make an arrest.” Id. (quoting 1 ABA Standards for Criminal Justice 1-4.5, commentary, at 1-124 to 1-125 (2d ed.1980)).[27] Given that Caraballo could have “lawfully declinefd] to make an arrest” in this case, I have some difficulty with the proposition expounded by the majority, based on irrelevant English common law, that under the facts of this case he incurred federal criminal liability under the misprision statute.
2. Accepting Caraballo’s Plea Was Plain Error
Finding no support for either of the aforementioned theories, the majority then resorts to the plain error standard to sustain Caraballo’s conviction. Having conceded that it might be error for the court to have overlooked the affirmative act requirement, the majority suggests that it was not plain error because no decision of this Circuit has ever rejected the extraordinary theory that a citizen may be con *86 victed under federal law for merely failing to report a crime. But in accepting Caraballo’s plea, it was incumbent on the district court to examine “the relation between the law and the acts the defendant admits having committed.” McCarthy v. United States, 394 U.S. 459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Not only does the misprision statute make clear that an element of “concealment” is required, but two Supreme Court cases and unanimity in the case law should be sufficient to make the error in the majority’s reasoning “plain.”, See United States v. Rodríguez-Pacheco, 475 F.3d 434 (1st Cir.2007) (discussing the fact that the majority’s reading of an ambiguous question of prior precedent “agrees with that of every circuit that has addressed the question”); see also Colby v. J.C. Penney Co., 811 F.2d 1119, 1123 (7th Cir.1987) (“Bearing in mind the interest in maintaining a reasonable uniformity of federal law and in sparing the Supreme Court the burden of taking cases merely to resolve conflicts between circuits, we give most respectful consideration to the decisions of the other courts of appeals and follow them whenever we can.”). The decisions of the Supreme Court and our sister circuits are most certainly difficult to overlook. That our court has not spoken as to the issue should not foreclose a finding of “plain error,” especially given the “archaic” and “uncommon” nature of the crime. Roberts, 445 U.S. at 558, 100 S.Ct. 1358; Goldberg, 862 F.2d at 109. Otherwise, under the majority’s approach, any theory of conviction, regardless of its support in the law, could pass plain error review so long as we have not rejected it.
The majority also suggests that we may affirm Caraballo’s conviction because the district court merely chose between two competing interpretations of the misprision statute. Although we have held that a court’s choice of two competing interpretations of a statute will not be disturbed on a plain error standard, these competing interpretations have had some support in the case law. See, e.g., Correa v. Hospital San Francisco, 69 F.3d 1184, 1196-97 (1st Cir.1995) (finding support for both plaintiffs and defendant’s interpretations of 42 U.S.C. § 1395dd(d)(2) in decisions from other circuits). Here,, as the majority concedes, any interpretation of the misprision statute that does not require an affirmative act is not truly “competing”: no court anywhere has adopted either of the Government’s proposed interpretations, and in fact, every court to have considered them has rejected them.[28]
The majority also suggests that even if there was plain error, it was not prejudicial. This conclusion rests on the statement in United States v. Dominguez Beni-tez that to prove prejudice, a defendant must “show a reasonable probability that, but for the error, he would not have entered the [guilty] plea.” 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). We have applied this standard before where a defendant has argued that there was no factual basis to support his guilty plea. See United States v. Delgado-Her *87 nández, 420 F.3d 16, 20 (1st Cir.2005). Likewise, the majority suggests that Caraballo’s conviction did not “adversely impact[] the fairness, integrity, or public reputation of judicial proceedings.” Riggs, 287 F.3d at 224.
It is hai'd for me to see how Caraballo would not be prejudiced, or the public reputation of judicial proceedings would not be adversely impacted if we affirm his conviction without any factual basis to support it. First, it is important to point out that in Delgado-Hernández, we decided that the Defendant was not prejudiced by his guilty plea because it was supported by an adequate factual basis. Id. at 32. We found, based on the evidence placed on the record before the district court, that if the Government had made a proper factual proffer, it could have established a factual basis for the defendant’s plea. Id. at 29; see also United States v. Sawyer, 239 F.3d 31, 50 (1st Cir.2001) (“To justify Sawyer’s guilty plea, it was enough that the government pointed to evidence, or proffered facts, that would furnish a rational basis for the plea.”) (Boudin, J., concurring). The same cannot be said here, where accepting all of the Government’s factual allegations as true, there is still no evidence to establish an affirmative act of concealment.
Furthermore, the entire purpose of the Rule 11 requirement that a district court find a factual basis for a plea is to “protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.” McCarthy, 394 U.S. at 467, 89 S.Ct. 1166 (quoting Fed. R.Crim.P. 11, advisory committee’s note). To put it another way, we do not allow a defendant to plead guilty without making some sort of determination, however cursory, that the defendant’s conduct is criminally punishable. As the record stands, even assuming the complete truth of the Government’s allegations, Caraballo plainly did not commit the crime of misprision because he did not commit an affirmative act of concealment. Nevertheless, he was allowed to be convicted. Thus, there is before us the conviction of a man who is plainly not guilty of the crime for which he was charged. A miscarriage of justice more prejudicial would be difficult to find.[29]
The Chief Judge’s concurrence improves on the majority opinion by not giving much credence to either of the Government’s proposed theories. But the concurrence still gets it wrong. When a defendant challenges a plea accepted by the district court, we grant the Government the extraordinary indulgence of not requiring that they provide any evidence to support the plea. See, e.g., United States v. Fountain, 111 F.2d 351, 355 (7th Cir.1985) (“A sufficient factual basis can be found even when the court engages in the most rudimentary questioning of the defendant if the indictment and statement of the prosecution’s evidence are sufficiently specific to make clear to the defendant exactly what *88 is being admitted to.”)- We will allow a plea to rest on the Government’s allegations alone, so long as they were presented to the district court. Sawyer, 239 F.3d at 50 (Boudin, J., concurring). This supports the policy of discouraging defendants from seeking to withdraw their pleas by later claiming, “I didn’t do it.”
However, the law does not allow us to affirm a plea simply because the Government states “the defendant committed a crime.” Rather, we must determine that the defendant’s conduct, as alleged by the Government, constitutes a crime. See United States v. Negrón-Nárvaez, 403 F.3d 33, 37 (1st Cir.2005) (“At its most abecedarian level, the requirement that a guilty plea must be supported by an adequate factual basis ensures that the conduct to which the defendant admits constitutes the crime with which he is charged.”). Not “maybe a crime,” not “possibly a crime,” but a crime as codified in the United States Code. The misprision statute, codified at 18 U.S.C. § 4, requires “concealment.” Any reasonable reading of this statute suggests that an affirmative act is required, as has been confirmed by years of unanimous precedent. The majority and concurring opinions raise the question of whether we should decide that a defendant can be convicted because he might have committed a crime that we might define differently in the future. In a system of justice that requires that defendants be provided with notice of prohibited conduct, the answer is a clear “No.”
Finally, I think it is important to address the majority opinion’s concluding statements. The majority assuages its concerns about the result by stating that Caraballo “participated in a major drug conspiracy,” and that other officers in the conspiracy received lengthy terms of imprisonment. Thus, the majority contends, Caraballo benefited from his plea agreement and is now looking a gift-horse in the mouth. It has long been my understanding that defendants are entitled to the presumption of innocence until proven guilty. Caraballo’s indictment alone does not establish that he is guilty of the crimes charged. Perhaps he did, as the majority contends, plead guilty to avoid prison time on more serious charges. Perhaps the Government had an interest in offering Caraballo a plea, as the concurrence suggests, because the Government had concerns about its own ability to obtain a conviction in the conspiracy case. Perhaps Caraballo was erroneously told that misprision charge against him was airtight because it required no showing of an affirmative act. We may never know why Caraballo pled guilty to the misprision charge, but it is ultimately irrelevant. Our country is a nation of laws, and we do not countenance the conviction of a defendant for a crime he did not commit simply because we suspect that he was bad or may have committed other crimes. A defendant must engage in the proscribed charged conduct to be found guilty of a crime, whether by plea or by trial. Because Caraballo did not engage in the conduct proscribed by 18 U.S.C. § 4, I would reverse his conviction. Accordingly, I dissent.

. The district court eventually transmitted a record to this court which referred to .the documents in the supplemental appendix, but this record only noted that the documents were part of the record in the conspiracy case, No. 01-613, rather than the misprision case.

. It is worth noting that although I agree with the majority that a document need not be admissible in evidence to be part of the record on appeal, it would need to be admissible for a district judge to consider it, and we would rule it error for the district judge to have relied on inadmissible evidence in com *80 ing to its conclusion. See Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 114 (1st Cir.2006).

. In similar cases, where a defendant has challenged the factual basis of a plea and the Government has responded with additional evidence, other courts have suggested that a court might either vacate the plea entirely or simply remand the case to the district court for consideration of the new evidence. See, e.g., United States v. Goldberg, 862 F.2d 101, 107 (6th Cir.1988) (“The second alternative is to remand the case to permit the government to supplement the record on the issue of ‘active concealment in an attempt to satisfy the district court of the existence of a factual basis for Goldberg’s plea of guilty.”). By deferring to a district court’s expertise in fact-finding, this would seem to be a more sensible resolution of Caraballo’s objection to the supplemental appendix.

. The majority's version of the facts relies heavily upon the supplemental appendix provided by the Government, which, as I have stated, cannot be considered on appeal because it was not presented to the district court. Thus, for example, we may not consider any of the evidence presented that Carabal-lo had actually committed the crime of conspiracy, a fact which has never been proven in any court. The prosecutor's fleeting reference to "Caraballo and his co-conspirators” does not establish Caraballo’s guilt, especially when one considers that the full statement made during the plea colloquy was "Specifically, when the agents asked him for information regarding the conspiracy that might identify the Defendant or his co-conspirators, or the conspirators in the case, he declined to furnish the specific information regarding the plot at that time.”
However, to the extent that the majority relies on the Government’s supplemental appendix, I would add that not only did Cara-ballo-Rodriguez make a full report to the DEA regarding what happened during the cocaine escort, but he also gave the DEA all of the money he had received, a fact not mentioned by the majority.

. The only felony whose "actual commission” Caraballo is alleged to have known was a conspiracy to distribute cocaine. 21 U.S.C. § 846. The majority also alleges that Cara-ballo was a member of this conspiracy. Thus, in effect, the majority suggests that we are able to punish Caraballo for failing to report his own crime. Certainly, criminally punishing someone for failing to incriminate themselves implicates the Fifth Amendment privilege against self-incrimination. See United States v. Kuh, 541 F.2d 672, 677 (7th Cir.1976) ("If the duty to notify federal authorities [of criminal conduct] is precluded by constitutional privilege, it is difficult to understand how a conviction [for misprision] could be substantiated [when the defendant is also involved in the criminal conduct].”). The majority suggests that by pleading guilty, defendants waive this privilege. However, it would be a very odd crime indeed which could only be prosecuted by guilty plea.

. Although I assume this fact for the sake of argument, it is not entirely clear. First, in his initial call to the DEA, Caraballo did in fact make the conspiracy “known,” although he did not provide additional details. In addition, under the majority's version of the facts, which are tainted by reference to the supplemental appendix, Caraballo later called the Government and informed them in painstaking detail about the conspiracy. The Government makes no attempt to argue that this later report was not made "as soon as possible.”

. In fact, it is the lack of affirmative duties (including a duty to report crimes) that remains one of the hallmarks of the distinction between common law jurisdictions (such as the United States) and civil law jurisdictions (such as those in Europe). Compare Martin Vranken, Duty to Rescue in Civil Law and Common Law: Les Extremes Se Touchent?, 47 Int’l & Comp. L.Q. 934, 937 (1998) (noting that “the French [civil] legal system can lay claim to [providing] 'the greatest encouragement to the Good Samaritan’ ”), with Liam Murphy, Beneficence, Law, and Liberty: The Case of Required Rescue, 89 Geo. L.J. 605, 606 (2001) (discussing the common law maxim that "positive legal duties threaten the common law’s traditional deference to individual liberty”). To the extent that our system of law has imposed duties to act, they have been imposed in order to prevent harm or peril to another. See generally Melody J. Stewart, How Making the Failure to Assist Illegal Fails to Assist: An Obseivation of Expanding Criminal Omission Liability, 25 Am. J.Crim. L. 385, 392-96 (1998) (discussing the role of traditionally recognized criminal-law duties). Furthermore, criminal liability for omissions has been imposed only when the defendant's omission can be said to have caused the harm or peril. See Arthur Leavens, A Causation Approach To Criminal Omissions, 76 Cal. L.Rev. 547, 562 (1988) (recognizing “the critical underlying premise that criminal omissions can occur only in 'cause-and-result' crimes, that is, crimes that proscribe the causation of a particular harm”). The misprision statute addresses conduct after any harm has occurred because it punishes concealment only after the actual commission of a felony. Furthermore, misprision does not appear to incorporate any element of causation, thus further suggesting that any common law analysis of criminal omission liability is inappo-site.

. It is worth noting that this is the “footnote omitted” in the long quote from Roberts on page 72 of the majority opinion.

. On page 74 and in footnote 10 of the majority opinion, the majority also suggests that "even a truthful but partial disclosure could conceal by misleading.” This is another example of the majority stretching the definition of the statute in favor of the Government. In addition, the Government made no allegation of fact in the district court that Caraballo’s brief phone call to the DEA was misleading. That the partial disclosure might have been misleading in other circumstances seems utterly irrelevant considering that the Government in this case had full knowledge of the facts.

. Of course, to date, no reported decision in the history of jurisprudence in the United States has mentioned what would appear to be a fairly large "exception” to the affirmative act requirement.

. That Caraballo was a state police officer who is being punished for failing to report a federal crime to federal authorities may raise federalism concerns. See Printz v. United States, 521 U.S. 898, 922, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (finding that requiring state officers to enforce a federal gun-control law violates the tenth Amendment).

.Town of Castle Rock found that a police officer’s failure to perform his statutory duty to report and investigate crime could not even give rise to civil, let alone criminal, liability. Id. at 766, 125 S.Ct. 2796.

. Moreover, if Caraballo had taken the time to pore over all of the court decisions on this question, he would have found no indication whatsoever that his failure to report the conspiracy was criminally punishable. “Obviously, citizens should not be subject to punishment without fair notice that their conduct is prohibited by law.” United States v. Thompson/Center Arms Co., 504 U.S. 505, 525, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992). There is no reason to think that this requirement is somehow less valid when a defendant pleads guilty to a crime. By dodging the question of whether failure to report a felony constitutes misprision, the majority creates substantial uncertainly as to whether such omissions may be punished in the future.

. Many courts have stated that the government's failure to prove each element of an offense beyond a reasonable doubt at trial is both prejudicial and a miscarriage of justice. See, e.g., United States v. Groves, 470 F.3d 311, 327-328 (7th Cir.2006) (''[A]llowing a conviction to stand without proof of an essential element of the crime meets the standard for plain error....”); United States v. Gaydos, 108 F.3d 505, 509 (3d Cir.1997) ("We believe that affirming a conviction where the government has failed to prove each essential element of the crime beyond a reasonable doubt ‘affects substantial rights,’ and seriously impugns 'the fairness, integrity and public reputation of judicial proceedings.’ ”). Here, the Government cannot even meet the minimal burden of showing that Caraballo committed a crime taking as true all of the facts that the Government alleged.